William S. Bennett (State Bar No. 315537)
wbennett@sdvlaw.com
SAXE DOERNBERGER & VITA, P.C.
Two BetterWorld Circle, Suite 200
Temecula, CA 92590
Ph: (951) 365-3145; Fax: (203) 287-8847

Attorney for Plaintiff,
TURNER CONSTRUCTION / PCL JOINT VENTURE

### UNITED STATES DISTRICT COURT
### CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| TURNER CONSTRUCTION / PCL JOINT VENTURE,<br><br>                                   Plaintiff,<br><br>v.<br><br>GREENWICH INSURANCE COMPANY; XL INSURANCE AMERICA, INC.<br><br>                                   Defendant. | Case No.:  [Case No.]<br><br>**TURNER CONSTRUCTION / PCL JOINT VENTURE'S COMPLAINT AGAINST GREENWICH INSURANCE COMPANY FOR: (1) DECLARATORY RELIEF; (2) BREACH OF CONTRACT AND AGAINST XL INSURANCE AMERICA, INC. FOR: (1) DECLARATORY RELIEF**<br><br>**DEMAND FOR JURY TRIAL** |

WHEREFORE, Plaintiff, TURNER CONSTRUCTION / PCL JOINT VENTURE, ("TPJV") by and through its attorneys, Saxe Doernberger & Vita, P.C., hereby complains and alleges as follows against Defendants GREENWICH INSURANCE COMPANY, ("Greenwich") and XL INSURANCE AMERICA, INC. ("XL") for whom:

### JURISDICTION AND VENUE

1.      Subject matter jurisdiction is founded in diversity of citizenship pursuant to 28 U.S.C.A. § 1332, based on the facts more specifically alleged in paragraphs 4 through 6 below.

2.     The amount in controversy, exclusive of interest and costs, exceeds the sum of $75,000.

3.     Venue lies in this district pursuant to 28 U.S.C.A. § 1391, in that a substantial part of the events or omissions giving rise to this action occurred in Los Angeles County, California, and/or a substantial part of the insurance claims that are the subject of this action pertain to property that is situated in Los Angeles County, California.

<b><u>PARTIES</u></b>

4.     At all times hereinafter mentioned, TPJV is a joint venture organized and existing under California law. TPJV is a joint venture consisting of Turner Construction Company ("Turner"), a corporation organized and existing under the law of the State of New York, with its headquarters also in the State of New York, and PCL Construction, Inc. ("PCL"), a corporation organized and existing under the law of the State of Colorado, with its headquarters located in the State of Arizona.

5.     TPJV alleges on information and belief that Greenwich is and was at all relevant times an insurer domiciled in Delaware with its principal place of business in Connecticut, and that Greenwich is and was at all relevant times authorized to transact business in California as an insurer.

6.     TPJV alleges on information and belief that XL is and was at all relevant times an insurer domiciled in Delaware with its principal place of business in Connecticut, and that XL is and was at all relevant times authorized to transact business in California as an insurer.

<b><u>FACTUAL ALLEGATIONS</u></b>

A. <u>Nature of the Claim</u>

7.     This Complaint involves insurance coverage issues between TPJV and its insurer, Greenwich, arising from alleged property damage relating to the construction of the Los Angeles International Airport, Midfield Satellite Concourse North (the "Project").

8.     Pursuant to a design/build services contract with the City of Los Angeles,

2

TPJV was hired as the prime contractor for the Project and subcontracted with various entities for specific portions of the construction, including subcontractors for the foundation system, Gonsalves & Santucci, Inc d.b.a. Conco ("Conco") and Shoring Engineers ("Shoring").

9.    The foundation system was constructed using concrete-filled rotary-installed displacement piles, also known as Torque-Down Piles ("TDPs"). With the proper degree of torque and downward pressure, the TDPs are intended to be driven into the ground in a screw-like manner. These TDPs were a critical element of the foundation for the structure itself and were required to be completed before many other downstream subcontractors could begin their work.

10.    Conco and Shoring both were involved in the installation of the TDPs.

11.    Due, in part, to improper installation of the TDPs, a variety of difficulties arose with the Project, including broken TDP pile tips, forced replacement or retorquing of the TDP piles, and damage to the ground area and foundation as a result of these issues.

12.    TDPs are installed in clusters to provide foundation support for the Project's steel frame superstructure.

13.    When a cluster of TDPs are completed, a concrete slab, known as a pile cap, is poured in place over the tops of the cluster of TDPs.

14.    The pile cap is incorporated into the overall foundation system through a series of grade beams, which combine with the pile caps to form the foundation for the building's superstructure.

15.    During the TDP installation process, 28 TDPs were physically broken in place, including numerous sheared TDPs and TDP tips, resulting in abandoned and/or lost hole events.

16.    Over 100 TDPs had to be retorqued and reinstalled.

17.    Other TDPs and pile tips that could not reach the specified depth for proper installation could not be retrieved and were abandoned in place.

TURNER CONSTRUCTION / PCL JOINT VENTURE'S COMPLAINT AGAINST GREENWICH INSURANCE COMPANY AND XL INSURANCE AMERICA, INC.

18.     At each location where a TDP installation was attempted, the TDP was driven into the ground and thereby displaced the soil in that location, forcing it out laterally.

19.     The lateral displacement of soil created increased compression in those locations.

20.     That compression resulted in correspondingly increased resistance to pile placement in and around those locations.

21.     Each of those locations, including the surrounding areas, became unsuitable for further use in conjunction with the foundation system.

22.     Whenever a TDP or TDP tip sheared off in the ground and/or was unable to be retrieved, the ground in that location was damaged and no longer able to be used as support for the Project's foundation system.

23.     Furthermore, the loss of hole events and the sheared and broken TDP tips remaining in the ground had more complicated effects than simply damaging that specific property location and rendering it unusable.

24.     TDPs rely on a concept called "skin friction" to properly "grab" the soil around them.

25.     When a TDP is in overly close proximity to another TDP, the "skin friction" may be rendered insufficient to provide the intended and required stability.

26.     Accordingly, the loss of TDP tips in certain locations not only rendered those locations unusable, but also damaged the surrounding locations.

27.     Further, even where broken piles were able to be removed, the process of removing those piles caused the soil around other piles to soften, thereby damaging the property in that location as well and rendering it less effective.

28.     The locations of the pile caps for the Project were selected with the original TDP locations in mind.

29.     When a pile location was moved or abandoned due to a loss of hole event, that meant that the location with the optimal compression resistance in the pile cap would also

TURNER CONSTRUCTION / PCL JOINT VENTURE'S COMPLAINT AGAINST GREENWICH INSURANCE COMPANY AND XL INSURANCE AMERICA, INC.

1    be changed depending on where the new supporting TDPs were located.

2        30.    It is best practice to the install a pile cap with equal proportionate resistance
3    distributed across the piles supporting it.

4        31.    TPJV was unable to do that given the property damage resulting from failed
5    TDP attempts and loss of hole events.

6        32.    As a result, TPJV was forced to re-design and re-position pile caps to account
7    for different pile positions, or otherwise re-design the foundation system components or
8    superstructure to account for the damage caused by the disproportionate compression
9    resistance.

10       33.    These processes took significant time to develop and calculate the appropriate
11   workaround.

12       34.    In either case, the property where the TDPs broke off or had to be removed,
13   as well as the property immediately surrounding those locations were damaged to the point
14   of being unusable for the remainder of the Project or at any other point in the future.

15       35.    In addition, because of the Project delays due to the TDP issues, TPJV
16   suffered a loss of use of its Project resulting in claims against TPJV by several follow-on
17   subcontractors who were impacted by the delays.

18       36.    As a result, multiple claims have been made against TPJV, which eventually
19   developed into suits and related counterclaims before this Court (Case No.
20   21STCV08805), as well as numerous counterclaims and cross-claims in arbitration
21   (American Arbitration Association, Case No. 01-21-0016-2313), alleging negligence and
22   other causes of action (collectively, the "Underlying Claims") against TPJV, Conco, and
23   Shoring with respect to alleged faulty installation of the TDPs.

24   **B.  Greenwich Policy and Handling of the Claims Asserted Against TPJV**

25       37.    TPJV is a named insured under a commercial general liability program, which
26   includes a primary policy issued by Greenwich, bearing policy no. GDR7445521, and
27   effective for the policy period of September 7, 2016, through November 7, 2020 (the

28

TURNER CONSTRUCTION / PCL JOINT VENTURE'S COMPLAINT AGAINST GREENWICH
INSURANCE COMPANY AND XL INSURANCE AMERICA, INC.

1    "Policy").

2    38.   The Policy contains a grant of coverage for "Bodily Injury and Property

3    Damage Liability" that provides:

4           We will pay those sums that the insured becomes legally

5           obligated to pay as damages because of "Bodily Injury" or

6           "Property Damage" to which this insurance applies. We will

7           have the right and duty to defend the insured against any "suit"

8           seeking those damages.

9    39.   The Policy defines "Property Damage" to mean:

10          (a) Physical injury to tangible property, including all resulting

11          loss of use of that property. All such loss of use shall be deemed

12          to occur at the time of the physical injury that caused it; or

13          (b) Loss of use of tangible property that is not physically injured.

14          All such loss of use shall be deemed to occur at the time of the

15          "occurrence" that caused it.

16   40.   The Policy defines "suit" to mean:

17          A civil proceeding in which damages because of "bodily injury,"

18          "property damage" . . . to which this insurance applies are

19          alleged. "Suit" includes:

20          (a) An arbitration proceeding in which such damages are

21             claimed and to which the insured must submit or does submit

22             with our consent; or

23          (b) Any other alternative dispute resolution proceeding in which

24             such damages are claimed and to which the insured submits

25             with our consent.

26   41.   The Policy is endorsed to specifically provide coverage for "'property'

27   damage resulting from faulty workmanship," which the Policy states "shall be deemed to

28

6

be caused by an 'occurrence.'"

42.     TPJV initially tendered this claim to Greenwich in September 2018. Greenwich denied coverage on or about July 26, 2019.

43.     TPJV re-tendered its claim to Greenwich in or around May 2020, which Greenwich denied on November 6, 2020, and reiterated on January 25, 2021.

44.     Yet again, TPJV retendered its claim to Greenwich on or about March 23, 2021, which it again denied on April 23, 2021.

45.     Despite repeated tenders, Greenwich has continued to refuse to defend TPJV in the Underlying Claims. Each denial, however, has cited to different reasons and policy provisions, demonstrating Greenwich's failure to adequately investigate the nature of the Underlying Claims being asserted against TPJV by the various parties.

46.     Most recently, TPJV retendered its claim to Greenwich on July 18, 2022, asking for a reconsideration of its position.

47.     As of the date of filing, Greenwich has continued to refuse to accept its duties and obligations to TPJV by not providing a defense to the claims asserted against its insured, or reimbursing TPJV for defense costs incurred thus far. This has left TPJV unreasonably exposed to liability in relation to the Underlying Claims asserted against it.

48.     Moreover, through its repeated refusals, Greenwich has caused TPJV significant economic injury by failing to investigate and properly respond to its claims, as well as forcing TPJV to incur extensive defense costs out of pocket in the Underlying Claims, as well as the costs of this suit.

**C. XL Excess Policy and Handling of the Claims Asserted Against TPJV**

49.     TPJV is a named insured under an excess liability policy issued by XL, bearing policy no. US00076472LI16A, and effective for the policy period of September 7, 2016, through November 7, 2020 (the "Excess Policy").

50.     The Excess Policy follows form to the Greenwich Policy and includes a grant of excess coverage that provides:

TURNER CONSTRUCTION / PCL JOINT VENTURE'S COMPLAINT AGAINST GREENWICH INSURANCE COMPANY AND XL INSURANCE AMERICA, INC.

A. We will pay on your behalf all "Loss" that you become legally obligated to pay in excess of all "Underlying Insurance" as shown in Item 4. of the Declarations [which includes the Greenwich Policy] providing that:

1. Such "Loss" is insured by all of the policies shown in our Schedule of "Underlying Insurance." If any "Underlying Insurance" does not pay damages, for reasons other than exhaustion of the aggregate limit of insurance, then we shall not pay such damages;

2. "Underlying Insurance" has been reduced or exhausted by payment of "Loss" to which this policy applies. In the event of a reduction or exhaustion in the underlying limit due to payment of such "Loss" we will:

a. Pay excess over the reduced underlying limit of the "Underlying Insurance"; or

b. Continue in force should the "Underlying Insurance" be completely depleted.

51.     The Excess Policy defines underlying insurance to mean:

G.   "Underlying Insurance" means the policy or policies of insurance as described in Item 4 of the Declarations and the Schedule of Underlying Insurance forming a part of this policy [which includes the Greenwich Policy]."

52.     TPJV initially tendered the claim to XL at the same time as its tender to Greenwich in September 2018. XL denied coverage on or about November 10, 2020.

## FIRST CAUSE OF ACTION

## DECLARATORY RELIEF AS TO GREENWICH

53.     TPJV realleges and incorporates by reference each and every allegation set forth above in this Complaint.

8

54.     An actual and justiciable dispute has arisen between TPJV and Greenwich concerning their respective rights and obligations under the Policy. TPJV asserts that Greenwich disputes, among other things, its obligations pursuant to the Policy to defend TPJV against the Underlying Claims and reimburse TPJV for defense expenses incurred since the date of TPJV's initial tender to Greenwich.

55.     TPJV further asserts that Greenwich disputes, among other things, its obligations pursuant to the Policy to indemnify TPJV against the Underlying Claims, to the extent such claims are ultimately determined to constitute liability for damages because of "property damage" caused by an "occurrence."

56.     A declaratory judgment, pursuant to 28 U.S.C. § 2201 and Rule 57 of the Federal Rules of Civil Procedure, is necessary and appropriate to determine the rights and duties of Greenwich pursuant to the Policy.

57.     TPJV now seeks a judicial determination and declaration of the parties' respective rights, obligations, and liabilities under the Policy.

58.     Declaratory relief is necessary and appropriate such that the parties may ascertain their respective rights and obligations.

### SECOND CAUSE OF ACTION

### DECLARATORY RELIEF AS TO XL

59.     TPJV realleges and incorporates by reference each and every allegation set forth above in this Complaint.

60.     An actual and justiciable dispute has arisen between TPJV and XL concerning their respective rights and obligations under the Excess Policy. TPJV asserts that XL disputes, among other things, its obligations pursuant to the Excess Policy to indemnify TPJV against the Underlying Claims upon exhaustion of the underlying Policy limits.

61.     A declaratory judgment, pursuant to 28 U.S.C. § 2201 and Rule 57 of the Federal Rules of Civil Procedure, is necessary and appropriate to determine the rights and duties of XL pursuant to the Excess Policy.

TURNER CONSTRUCTION / PCL JOINT VENTURE'S COMPLAINT AGAINST GREENWICH INSURANCE COMPANY AND XL INSURANCE AMERICA, INC.

62.     TPJV now seeks a judicial determination and declaration of the parties' respective rights, obligations, and liabilities under the Excess Policy.

63.     Declaratory relief is necessary and appropriate such that the parties may ascertain their respective rights and obligations.

## THIRD CAUSE OF ACTION

## BREACH OF CONTRACT AS TO GREENWICH

64.     TPJV realleges and incorporates by reference each and every allegation set forth above in this Complaint.

65.     The Policy is a valid written contract enforceable against Greenwich that affords TPJV coverage against, and in relation to, the Underlying Claims.

66.     TPJV has repeatedly submitted written demands for Greenwich to acknowledge and comply with its duties under the Policy, including the duty to defend TPJV against the Underlying Claims.

67.     Greenwich has breached the Policy by wrongfully (1) failing to properly and thoroughly investigate the Underlying Claims; (2) denying rights to which TPJV is entitled under the Policy, including the right to a defense; and (3) maintaining positions on the availability of coverage that violate the laws of California. This list provides examples of Greenwich's actions, each of which constitutes a breach of the Policy.

68.     As a direct and proximate result of Greenwich's actions, TPJV has suffered damages in an amount to be proven at trial.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff TPJV prays for relief as follows:

1.     As to the first Cause of Action, a declaration that Greenwich was and is obligated under the Policy to comply with its duty to defend TPJV against the Underlying Claims;

2.     As to the second cause of action, a declaration that XL was and is obligated under the Excess Policy to comply with its duty to indemnify TPJV against the Underlying

TURNER CONSTRUCTION / PCL JOINT VENTURE'S COMPLAINT AGAINST GREENWICH
INSURANCE COMPANY AND XL INSURANCE AMERICA, INC.

Claims;

3.     As to the third Cause of Action, general consequential and compensatory damages, and attorneys' fees and costs in an amount according to proof;

4.     Pre-judgement interest according to proof; and

5.     Such other and further relief as the Court may deem just and proper.


## **DEMAND FOR JURY TRIAL**

Plaintiff TPJV hereby demands a jury trial.


Dated:     September 23, 2022          SAXE DOERNBERGER & VITA, P.C.


_____
William S. Bennett
Attorney for Plaintiff

11

TURNER CONSTRUCTION / PCL JOINT VENTURE'S COMPLAINT AGAINST GREENWICH
INSURANCE COMPANY AND XL INSURANCE AMERICA, INC.